## SHIPE et al. v. FLORAL HILLS, Inc (SOERGEL et al., Intervenors).

### No. 5568.

United States District Court
W. D. Missouri, W. D.

Nov. 19, 1949.

986

Robert M. Murray, Kansas City, Mo., for plaintiffs and for intervenors.

I. Frank Rope, A. C. Trippe, Kansas City, Mo., for defendant.

RIDGE, District Judge.

Plaintiff, a citizen and resident of the State of California, invokes the jurisdiction of this Court, for herself and the class she assumes to represent, to secure the appointment of a receiver, to take over all the property and assets of defendant; preserve and administer the same under orders of this Court, until certain contractual obligations defendant is alleged to have incurred, to plaintiff and the class, are fulfilled. The contractual obligations sought to be enforced, in the aforesaid manner, arise out of the sale of certain burial plots defendant is alleged to have made to plaintiff and other members of the class. The contention is made that at the time of the sale of burial plots defendant agreed to establish an irrevocable "Perpetual Care Trust Fund" and deposit therein at least ten percent (10%) of the gross amount of money received by defendant from the sale price of all lots sold in Floral Hills Cemetery, located in Jackson County, Missouri, owned by defendant; and to construct spe-

cified gardens, chimes building, and otherwise beautify the cemetery grounds; that defendant has not attempted to fulfill such promise and obligations, and, unless the relief here prayed is granted, it will never do so, as evidenced by certain alleged attitude of defendant's officers in the manner of their conduct of defendant's business. Jurisdiction of this cause depends on diversity of citizenship and that more than $3,000 is involved. Defendant now challenges our jurisdiction on both such factors.

■ Jurisdictional Amount: Although issues are raised as to whether the contracts for the sale of the burial plots in question were directly made by defendant, or were the obligations of an independent sales agency and hence no controversy here exists between plaintiff and defendant regarding the "res", and no amount is involved; for the purpose of the instant motion to dismiss for want of jurisdiction, we shall assume that the contractual obligations sought to be enforced are such as might be binding on defendant, as plaintiff contends. In the complaint it is alleged that defendant, in order to induce plaintiff, and the class, to purchase burial plots in said cemetery, promised and agreed to do the things above stated, and that the same were made as a "part of the consideration and payment for said burial plots." Thus are the contractual obligations plaintiff seeks to have enforced against defendant shown to be premised. Under the contention so made, it is clear that the matter involved in this action is the "trust fund" defendant promised to establish; the creation of gardens and erection of a chimes building in the cemetery, pursuant to a contract plaintiff alleges she has with defendant. Plaintiff asserts defendant has sold "over one million dollars in lots and collected that amount from such sales" but defendant has not, as it contracted to do, deposited more than $50,000.00 in said trust fund. In determining the amount in controversy, we must look to the pecuniary result, to either party, which a decree herein will produce, either at once or in the future. Elliott v. Empire Natural Gas Co., 8 Cir., 4 F.2d 493. The value of the object to be attained by this suit is, as to the trust fund, as above revealed, the sum of $50,000. We must here determine from the issues raised, whether defendant is obliged to deposit in the trust fund in question ten percent (10%) of the amount of gross sales realized from the sale of burial plots in its cemetery, which it is alleged amount to more than one million dollars. If so, the pecuniary result to defendant would be that it must deposit $50,000 more in the coffers of the trust fund. From that basic consideration alone, the requisite jurisdictional amount is here present. Cf. Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174; Smith v. Adams, 130 U.S. 167, 9 S.Ct. 566, 32 L.Ed. 895; Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821. We need not discuss other pecuniary results a decree herein would also produce. Suffice it to say that we perceive them to be, from the pleadings alone, of a value of more than $3,000.

■ Diversity of Citizenship: From the allegations of the complaint, it appears that the non-resident plaintiff alone entered into a contract of sale with defendant for Lots 17-18 and East One-Half of 19, in Section 4, of Floral Hills Cemetery, and that she is now the sole owner thereof. After this action was instituted, leave was granted to Ida L. McQuitty and Montgomery McQuitty to intervene herein. The intervening petition of said parties, now on file, reveals that they appropriate, verbatim, the allegations of the complaint and that they entered into a contract of sale with defendant for the identical burial plots plaintiff says she purchased, and that said intervenors assert ownership thereof. Depositions taken, and introduced in evidence in support of the instant motion to dismiss, reveal that on December 14, 1934, intervenor Ida L. McQuitty purchased the aforesaid burial plots and took title thereto, jointly, in her own name; that of her son, Montgomery McQuitty (her co-intervenor), and her daughter, Ida Fay McQuitty (now Mrs. C. F. Shipe, the plaintiff in this action). Without further laboring the matter, it is sufficient to say: that from

the pleadings and evidence before the Court it clearly appears that the contract and obligations plaintiff and the above-named intervenors here seek to enforce against defendant, arise out of a single contract of sale and that the title to the burial plots above described is held by plaintiff and said intervenors as tenants in common. Sec. 3504, R.S.Mo.1939, Mo. R.S.A. As a consequence, we are compelled to determine who are the "real parties in interest" in this action.

■ Ida L. McQuitty and Montgomery McQuitty are residents of the State of Missouri, as is the defendant. The interest they assert in this action by way of intervention, is identical with the interest of the plaintiff. The rights and interests that all three of said parties assert and contend for flows to them, if at all, from a single contract of sale, and is common to the title to the burial plots of which they claim joint ownership. Whatever may be the results of a decree in this action, it is manifest that a determination of the issues raised by the complaint will ipso facto determine all the issues raised in the intervening petitions of the McQuittys. The McQuittys by their intervention seek no relief that plaintiff does not seek in her complaint. Under such circumstances, the plaintiff and intervenors McQuitty are conclusively shown to be arrayed on the same side of this controversy. Where jurisdiction of a Federal District Court rests on diversity of citizenship the diversity must be complete, and in ascertainment of that fact all parties to an action will be aligned as plaintiffs or defendants according to their real interest in the controversy. Hudson et al. v. Newell et al., 5 Cir., 172 F.2d 848. When, by intervention, new parties are brought into an action over which a Federal District Court has previously acquired jurisdiction by reason of diversity of citizenship, and the new parties so coming into the action are shown to be indispensable parties to the main action, they will be aligned with the original parties plaintiff or defendant, and if upon such alignment the previously existing citizenship is destroyed the District Court loses jurisdiction to proceed with the action.

Kentucky Natural Gas Corp. v. Duggins, 6 Cir., 165 F.2d 1011; Schuckman v. Rubenstein, 6 Cir., 164 F.2d 952, certiorari denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151. Diversity of citizenship cannot be attained, so as to give a Federal Court jurisdiction, by failing to join on one side, or the other, one who is an indispensable party to the cause of action. Metropolis Theatre Co. v. Barkhausen, 7 Cir., 170 F. 2d 481. Indispensable parties to an action are "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." Shields v. Barrow, 17 How. 129, 58 U.S. 129, 147, 15 L.Ed. 158; State of Minnesota v. Northern Securities Co., 184 U.S. 199, 22 S.Ct. 308, 46 L.Ed. 499. Plaintiff and intervenors McQuitty are not here suing, as tenants in common, to recover any interest in the burial plots to which they claim ownership, or asserting a right in property, or fund in the possession of the Court, ancillary to the main action. They are suing on a single contract, alleged to have been made by defendant with all three of them. Their right to relief as prayed "stands or falls as a single unit" on that contract. Kentucky Natural Gas Corp. v. Duggins, supra, 165 F.2d page 1016. In enforcing that indivisible right in this action, the Court has, by virtue of the fact of the citizenship of the intervenors Ida L. McQuitty and Montgomery McQuitty being the same as that of the defendant, lost jurisdiction to further proceed with this action, if the Court ever had jurisdiction thereof.

Other interventions have been permitted in this action. As to one of them, if instituted as an original action, the Court might have had jurisdiction. But the Court, not having jurisdiction of the main action, for want of requisite diversity of citizenship, cannot predicate its jurisdiction here on such other intervention. Schmoll Fils, Inc., et al. v. The Fernglen et al., D.C., 85 F.Supp. 578; Pianta v. H.

M. Reich Co., Inc., et al., 2 Cir., 77 F.2d 888.

Defendant's motion to dismiss this action for lack of jurisdiction, is by the Court sustained.