James Q. BRYAN and Gratha Bryan, Appellants,

v.

The AETNA CASUALTY AND SURETY COMPANY, Appellee.

No. 18692.

United States Court of Appeals Eighth Circuit.

Sept. 6, 1967.

Bernard Whetstone, El Dorado, Ark., for appellants; William Powell Thompson, Little Rock, Ark., and James E. Stein, El Dorado, Ark., were with him on the brief.

John M. Shackleford, Jr., El Dorado, Ark., for appellee; Shackleford & Shackleford, El Dorado, Ark., were with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

James Q. Bryan of El Dorado, Arkansas, was injured when a bus in which he was a passenger turned over on the morning of November 24, 1964. Mr. Bryan and his wife obtained a default judgment, based on negligence, against Herman Reid, the bus driver, in the amount of $75,000 for Bryan and $10,000 consortium loss for Mrs. Bryan, in the Circuit Court of Union County, Arkansas.

The Bryans then instituted this omnibus clause suit in Arkansas directly against Aetna, under Ark.Stat.Ann. § 66–4001 (1966 Repl.), for the amounts

of the judgment against Reid and, under § 66–3238, for the statutory penalty and attorney's fees. After the submission of interrogatories to Aetna, its answers thereto, and affidavits and offers of proof, Aetna moved for summary judgment. Judge Harris granted that motion. The Bryans appeal.

The facts, as so developed, are:

Aetna issued to Ford, Bacon & Davis Construction Corp., hereinafter called Ford, its Comprehensive Liability Policy for the calendar year 1964. This afforded protection for bodily injury liability with respect to an owned vehicle, including, in particular, the bus hereinafter described, but with specific definitional exclusions.* The policy was issued, executed and countersigned in the State of Louisiana and delivered to Ford at its office there.

Ford had entered into a contract with Arkansas Louisiana Gas Company for the construction of a pipeline entirely within Arkansas and running from Driggs to Erwin, a distance of more than 100 miles. This work required the employment of pipefitters. At the time of the accident there was in existence a National Pipe Line Agreement between the Pipe Line Contractors Association, as employer, and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, as a union. Ford was a member of the Pipe Line Contractors Association. This National Pipe Line Agreement provided working rules. One of these was:

"Employer shall select a warehouse in or near a city, town or community where living accommodations are available. Employer shall make suitable and prompt transportation available from the warehouse to the work site and back to the warehouse. The time of men shall start when the men leave the warehouse for the job site and shall end at quitting time on the job site; however, the lunch period shall be excluded. Employer shall return the men to the warehouse in the shortest possible time."

In line with this working rule Ford selected a warehouse at Russellville, Arkansas, in the general area where it was then laying pipe. Transportation was made available by Ford for pipefitters from that warehouse to the jobsite and return. This was afforded by a bus leaving at seven a. m. The bus was owned by Ford. Its driver was Reid who was employed by Ford. Pipefitters, as the working rule provided, were paid from seven a. m. even though the jobsite was over 30 miles from the warehouse and even though it was some time after seven before the bus reached that site.

Plaintiff Bryan was a pipefitter, a union member and thus a beneficiary of the National Pipe Line Agreement. He had been dispatched to the job by the union. He began his employment with Ford in October 1964. On November 24, the day of the accident, Bryan boarded the bus either at the Russellville warehouse or at a point between the warehouse and the jobsite. The bus made a stop where one or more riders got off. The others, including Bryan, remained in the vehicle. The bus proceeded on its way. The accident occurred when it was

---

* Coverage A—Bodily Injury Liability—Automobile

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile. * * *

III. Definition of Insured

The unqualified word "Insured" includes the named Insured and also includes * * * (2) under Coverages A and B, any person while using an owned automobile * * * provided the actual use of the automobile is by the named Insured or with his permission * * *. The insurance with respect to any person * * * other than the named Insured does not apply under division (2) of this insuring agreement * * * (c) to any employee with respect to injury to * * * another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of an automobile in the business of such employer. * * *

about 400 yards from the place where pipe was being laid.

The plaintiffs offered to show that it was not mandatory for pipefitters to ride the bus; that it is common practice on jobs of this kind for workers not to avail themselves of the transportation provided; that some come to the jobsite in privately owned vehicles or by other means and join the transported workers as the latter unload from the bus; that although a non-rider would draw time from seven a. m., it was conceivable that he could be asleep in bed in quarters close to the site and could get up after that hour and still be there when the bus arrived; that the bus reached the site about an hour after seven; that Bryan was a member of a highly specialized craft; that his work was confined to that craft and he was forbidden to do anything else; and that there was nothing the employer could order him to do on the bus or at the warehouse.

Aetna's position, on the motion for summary judgment, was that at the time of the accident both plaintiff Bryan and driver Reid were employees of Ford and liability was therefore excluded under the policy's Definitions paragraph III(2) (c) set forth in the footnote. In response, the plaintiffs argued that, although a pipefitter such as Bryan, who was hired to do only pipefitting, did draw pay from seven a. m., his work day did not begin until he arrived at the site, picked up his tools and went to work, and that, in any event, for any moment prior to that point the question whether Bryan was "in the course of such employment" was one of fact for the jury.

■ This court on many occasions has enunciated the familiar rules which apply to a motion for summary judgment made by the defending party under Fed. R.Civ.P. 56. The moving party has the burden of demonstrating the absence of any genuine issue as to any material fact. The evidence is to be viewed in the light most favorable to the plaintiff against whom the motion is directed and the plaintiff is entitled to all favorable inferences which may be reasonably drawn from the evidence. The supporting affidavits are to be carefully scrutinized. On appeal from an order granting the defendant's motion the court must give the plaintiff the benefit of every doubt. Caylor v. Virden, 217 F.2d 739, 741 (8 Cir. 1955); United Pac. Ins. Co. v. United States, 296 F.2d 160, 165 (8 Cir. 1961); Allied Mut. Ins. Co. v. Lysne, 324 F.2d 290, 293 (8 Cir. 1963); Jacobson v. Maryland Cas. Co., 336 F.2d 72, 74 (8 Cir. 1964), cert. denied 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558.

We are seemingly confronted at the outset with a conflicts question. Are we to apply the Arkansas conflict of laws rule or the Louisiana rule? Is the insurance policy to be construed in the light of the substantive law of Louisiana, where it was made, or of that of Arkansas, where Ford was performing?

We find that we need not resolve this issue, for we conclude that the same result ensues for this diversity case under the substantive law of either Louisiana or Arkansas and that the respective conflicts rules, whatever they may be, consequently have no significance.

■ The substantive law of Louisiana, as the plaintiffs conceded at oral argument, is clearly unfavorable to the Bryans. There, when an employee is injured while being transported to work in a vehicle furnished by the employer, the injury is considered to have occurred in the course of his employment, under either compensation laws or liability policy exclusions, irrespective of whether the employee was or was not on pay status at the moment of the injury. Griffin v. Catherine Sugar Co., 219 La. 846, 54 So.2d 121, p. 124 (1951), where it was said that "the work in the instant case began when the plaintiff reached the cane fields * * * but the employment began when he boarded the trailer at his home * * * and continued during the trip and during the work and on the return trip to his home"; Neyland v. Maryland Cas. Co., 28 So.2d 351 (La.App. 1946), even though "many employees used other means of transportation"; Estaves v. Faucheux, 111 So.2d 802, 806–

808 (La.App.1959); Davis v. Travelers Ins. Co., 295 F.2d 205, p. 206 (5 Cir. 1961), where it was said, "Even though an injured employee is not on a pay status at the time of the accident, he is within the scope of his employment if he is being transported to work by his employer".

We turn to the law of Arkansas. Judge Harris stated that no Arkansas case positively linking employment to employer-furnished transportation, irrespective of momentary pay status, has been found. He felt that if a question had arisen as to whether Bryan or Reid were co-employees, that issue might have been one for the jury. But he phrased the issue before the court as follows:

"The question, however, is did he become an employee of the company and on duty at the time the bus left with the employees * * * or whether * * * his employment actually started when he got to the particular point and place where he was going to commence work with the wrench, bolts and pipes".

His conclusion was that Bryan "was an employee of the company under the agreement referred to and that his course of employment started at the time the bus left with the employees".

We agree with Judge Harris that the Arkansas cases are not so positive as those of Louisiana in affording clearly controlling precedent here. Four Arkansas decisions deserve special comment, for in all of them the court concluded that a question for the finder of fact was presented.

In Commercial Cas. Ins. Co. v. Cherry, 190 Ark. 422, 79 S.W.2d 270 (1935), the exclusion was as to employees engaged in the insured's business. The claimants were cotton pickers injured when a truck overturned. The insured used the truck to transport pickers from nearby towns to his plantation. Each was paid for what he picked. On the day in question they were trucked to the field but, because it was raining, they did no picking. The accident occurred on the return trip. The court said, p. 272, "On the day they were injured, they picked no cotton, so it cannot be said with certainty that they were employees that day or engaged in appellee's business"; indicated that some activity was necessary for exclusion; and held that the question whether they were so engaged was for the jury.

One week later the court decided Travelers' Indem. Co. of Hartford v. Smith, 190 Ark. 492, 79 S.W.2d 1008 (1935). Here, too, the exclusion clause related to an employee "engaged in the business of the assured". The court, pp. 1009–1010, quoted an earlier case, Benefit Ass'n Ry. Employees v. Hayden, 175 Ark. 565, 299 S.W. 995, 996, 57 A.L.R. 622 (1927), which in turn quoted a still earlier case, Benham v. American Central Life Ins. Co., 140 Ark. 612, 217 S.W. 462, 463 (1919), to the effect that "The word 'engaged' denotes action", and stated that it had held in *Cherry* that a similar exclusion clause did not prevent one from recovering damages merely because he was in the insured's employ, provided he "was not at the time actually engaged in the master's business."

Walker v. Countryside Cas. Co., 239 Ark. 1085, 396 S.W.2d 824 (1965), had to do with an injury to an 18-year-old boy incurred while he was helping grease the insured's dump truck. There the exclusion clause related to injury to an employee "arising out of and in the course of * * * employment by the insured". The court observed, p. 826, "First, let it be said that a provision excluding coverage for injuries to employees has been held to be unambiguous, and to be valid and enforceable", and, p. 828, that the phrase * * * " 'other employment by the insured,' simply means that no coverage under the policy is afforded where an employee of the insured is injured during the course of his employment". The question, then, was whether the injured boy was an employee of the insured at the time he received the injury. This, the court concluded, was a question for the fact finder. United States Fid. & Guar. Co. v. Employers' Mut. Cas. Co., 234 Ark. 921, 355 S.W.2d

613 (1962), involved a similar exclusion clause but pivoted on the question whether the injured person was engaged in domestic employment at the time of the accident.

Two of these four Arkansas cases thus concern the older exclusion clauses, see American Fire & Cas. Co. v. Bramlett, 253 F.2d 218, 219, footnote 1 (5 Cir. 1958), which were different and more "active" in character than the one presently before us. The other two are concerned with an occasional worker and whether, at the time of his accident, he was employed. The *Walker* and *Employers' Mutual* cases, we feel, are not helpful here. The situation of a teen-age boy who assisted the insured now and then over a six-year period and that of a woman on the way to a laundromat to help with family laundry and then go to a show are situations of uncertainty and far less specific than that of a journeyman pipefitter regularly employed on a large pipe laying project under conditions specified by a concededly applicable National Pipe Line Agreement.

Perhaps Martin v. Lavender Radio & Supply, Inc., 228 Ark. 85, 305 S.W.2d 845 (1957), also has some import. There the question was whether an employee who was injured while driving to work and who often, while doing so, picked up the employer's mail at the post office, was protected by workmen's compensation or, instead, by a non-industrial accident policy covering employees for off-the-job injuries. The two policies were mutually exclusive. The accident occurred one morning before the claimant turned off his route on his way to work to go to the post office and when "he did not know whether he was going" there that morning. The court observed, p. 849,

"Martin left home to go to work. That was his main objective in getting into his automobile and starting from the house. Certainly he was not leaving with the intention of picking up the mail and then returning back to the home. His duty to pick up the mail had no part in creating the necessity for travel, until he reached that point in his journey where he would deviate from the route to the office in order to go to the post office."

It held that coverage was not afforded by the compensation policy applicable to an injury arising in the course of employment and held,

" 'The decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils. * * * We do not say that service to the employer must be the sole cause of the journey but at least it must be a concurrent cause, * * * ', and sufficient within itself to occasion the journey."

In our present factual context Bryan's employment with Ford is what sent him on his journey in the Ford-owned and Ford-driven bus to the jobsite. Any significance which this case possesses for us here is thus in the direction of exclusion.

The decisions elsewhere, of course, are not conclusive as to Arkansas law, but they are not without significance and, we think, are indicative. Many of the transportation-furnished-by-the-employer cases are collected in the annotation at 50 A.L.R.2d 78, 92, § 5 (1956), and the supplements thereto. Although some cases hold the insurer liable and others reach the opposite conclusion, we feel that a careful analysis of the decisions indicates that, so far as they provide authority for the kind of exclusion clause present here, any inconsistency in result is more apparent than real. Thus, a number of the cases where liability is held to exist concern the older and different exclusion clause directed to activity in the employer's business. The typical clause of this kind speaks of "engaged in the business of the insured". Judge Phillips, in B. & H. Passmore M. & R. Co. v. New Amsterdam Cas. Co., 147 F.2d 536, 538 (10 Cir. 1945), an Oklahoma case, emphasized this factor and said,

"Moreover, the exclusion clause 'engaged in the business, * * * of the insured' differs materially from

the clause 'arising out of and in the course of his employment.' The word 'engaged' connotes action."

Other examples of coverage in the face of an exclusion clause of this type are Elliott v. Behner, 150 Kan. 876, 96 P.2d 852 (1940); Francis v. Scheper, 326 Mich. 441, 40 N.W.2d 214 (1949); Southern Farm Bureau Cas. Ins. Co. v. Bohls, 304 S.W.2d 534 (Tex.Civ.App.1957).

This court in applying Missouri law has denied coverage even under a clause of this more active "engaged in the business" type. State Farm Mut. Auto. Ins. Co. v. Brooks, 136 F.2d 807, 811–812 (8 Cir. 1943), cert. denied 320 U.S. 768, 64 S.Ct. 80, 88 L.Ed. 459, where Judge Woodrough said:

"Here the boys had no other means of getting to the slab pile and their transportation back and forth was contemplated in the contract of employment and was a necessary part of the insured's business."

Campbell v. American Farmers Mut. Ins. Co., 238 F.2d 284, p. 288 (8 Cir. 1956), where we stated particularly, that the exclusion provision was without ambiguity. See Getlin v. Maryland Cas. Co., 196 F.2d 249, 50 A.L.R.2d 73 (9 Cir. 1952).

On the other hand, where the exclusion clause speaks, as does the one before us, of "the course of such employment", the cases, for the most part, appear to deny coverage. See, for example, Davis v. Travelers Ins. Co., supra, 295 F.2d 205 (5 Cir. 1961); Turnage v. State Farmers Mut. Tornado Ins. Co., 388 S.W.2d 342 (Mo.App.1965); Rollo v. California State Auto. Ass'n, 159 Cal.App.2d 172, 323 P.2d 531, p. 534 (1958), where the Court stated, "[t]hat clause clearly and without ambiguity excludes this very risk"; Morfoot v. Stake, 174 Ohio St. 506, 190 N.E.2d 573 (1963); Webb v. State Farm Mut. Auto. Ins. Co., 151 F. Supp. 359 (S.D.W.Va.1957); see T.I.M. E., Inc. v. Maryland Cas. Co., 294 S.W. 2d 746 (Tex.Civ.App.1956).

It has been said that the purpose of an exclusion clause of this kind in a lia-

bility policy is to distinguish between the general public, on the one hand, and the insured's employees, on the other. State Farm Mut. Auto. Ins. Co. v. Brooks, supra, p. 811 of 136 F.2d; Auto Racing, Inc. v. Continental Cas. Co., 304 F.2d 697, 699 (10 Cir. 1962); Lumber Mut. Cas. Ins. Co. of New York v. Stukes, 164 F. 2d 571, 573 (4 Cir. 1947).

Judge Harris has held that, as a matter of law, the policy's clause excluding from the definition of "Insured" any employee with respect to injury to another employee of the same employer "injured in the course of such employment" rendered Aetna not liable for Reid's negligence or for the defense of the Bryans' action against Reid.

We see nothing in the decided Arkansas cases which contraindicates this conclusion on the part of the district court. Where the Arkansas court has submitted the issue of employment to the jury, either the exclusion clause has been more strongly phrased or the claimant's work has been no more than occasional in nature. The decisions elsewhere, while not controlling, look definitely and consistently, we feel, under a clause of the type with which we are here concerned, in the direction of exclusion rather than coverage.

█ We are impressed, as Judge Harris was, with the facts that, although the use of this transportation was not mandatory, it was provided by Ford pursuant to its specific obligation so to do under the working rules of the National Pipe Line Agreement; that this was not a casual providing of transportation; that the pipefitters' time started when the bus left the warehouse; that the bus was provided for the express purpose of conveying pipefitters from the warehouse to the jobsite; that there is no issue as to the co-employee status of plaintiff Bryan and driver Reid; that, when the accident happened, the bus was proceeding down the jobsite; and that the exclusionary clause in effect here is not one which refers to being "engaged in the business of the insured" but relates,, instead, to "the course of such employment in an

accident arising out of the maintenance or use of an automobile in the business of such employer". There is too much adverse factual material in this case for the plaintiffs to make a jury question.

We do not rest our conclusion solely on the fact that Bryan was on pay status at the time of the accident. That, as we have noted, is but one of several factors. And we need not decide whether the same result would follow had the accident occurred on the return trip at the end of the work day when the pipefitters' pay hours for the day had ceased.

Affirmed.