Barbara Ann HATRIDGE, Appellant,

v.

AETNA CASUALTY & SURETY COMPANY, Appellee.

Gene Rodney HATRIDGE, Barbara Ann Hatridge and Herman L. Reid, Appellants,

v.

AETNA CASUALTY & SURETY COMPANY, Appellee.

Nos. 19348, 19349.

United States Court of Appeals Eighth Circuit.

Sept. 2, 1969.

2. C. Clinton Carpenter and Phyllis S. Carpenter, T.C.Memo 1968–157, ¶ 68,157 P–H Memo T.C. (1968).

Bernard Whetstone, Little Rock, Ark., for appellants.

Dennis L. Shackleford, of Shackleford & Shackleford, El Dorado, Ark., for appellee; John M. Shackleford, Jr., El Dorado, Ark., on the brief.

Before BLACKMUN, MEHAFFY and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

These diversity cases present interesting questions of federal jurisdiction. The appeals, although separate, are related. We treat them in one opinion. The facts are not in dispute.

1. On the morning of November 24, 1964, a bus turned over in Arkansas. It was owned by Ford, Bacon & Davis Construction Corporation and at the time was being driven by Herman Reid in the course of his employment with Ford. Gene Rodney Hatridge and James Q. Bryan were passengers on the bus at the time of the accident. Each was injured. There was outstanding a comprehensive liability policy issued by The Aetna Casualty and Surety Company to Ford. This provided Ford coverage for bodily injury liability with respect to owned motor vehicles including the bus. The policy, however, had definitional exclusions. Among these was one to the effect that the insurance did not apply "to any employee with respect to injury to * * * another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of an automobile in the business of such employer."

2. In March 1966, in the Circuit Court of Union County, Arkansas, Mr. Bryan and his wife obtained a default judgment, based on negligence, against bus driver Reid in the amount of $75,000 for Bryan and $10,000 consortium loss for Mrs. Bryan. Aetna had been given timely notice of the pendency of that state court action but did not defend it.

3. In June 1966 the Bryans sued Aetna in federal court for the Western District of Arkansas to recover the

amount of the judgment against Reid plus interest, statutory penalty and fees. This suit was based on Arkansas' direct action statute, Ark.Stat.Ann. § 66–4001 (1966 Repl.) and on § 66–3238 which allows 12 per cent damages and attorneys' fees for nonpayment of an insured loss. The Bryans took the position that Reid was an omnibus insured under Aetna's policy to Ford.

4. In July 1966, in the Circuit Court of Union County, Arkansas, Mr. Hatridge and his wife, Barbara Ann Hatridge, also obtained a default judgment, based on negligence, against bus driver Reid in the amount of $50,000 for Hatridge and $10,000 consortium loss for Mrs. Hatridge. Aetna had been given timely notice of that suit and refused to defend it.

5. In the federal suit instituted by the Bryans, Aetna, after the submission of interrogatories, answers thereto, affidavits and offers of proof, moved for summary judgment. Chief Judge Harris granted that motion. The Bryans appealed. This court affirmed, holding that, as a matter of law, the quoted definitional exclusion served to relieve Aetna of any liability to the Bryans because the bus at the time of the accident was being used in Ford's business and because both Reid and Bryan were then in the course of employment by Ford. Bryan v. Aetna Cas. & Sur. Co., 381 F.2d 872 (8 Cir. 1967). This court's opinion for that appeal was filed September 6, 1967.

6. One week later, on September 13, Mrs. Hatridge instituted an action against Aetna under § 66–4001 in the Circuit Court of Union County, Arkansas, seeking $9,999.99, or one cent less than the amount of her judgment against Reid.[1] Her complaint recites that she "now irrevocably and unconditionally waives all of her right to recover on any count, including, but not limited to, the principal amount of the Judgment, costs, interests, penalty, attorneys fees, or any other possible claim whatsoever in excess of $9,999.99."

7. On September 28 Aetna removed Mrs. Hatridge's action to the United States District Court for the Western District of Arkansas. ·

8. On the same day Aetna filed its answer in Mrs. Hatridge's suit and, joining Mr. Hatridge and Reid as third party defendants, its "Counter Claim and Cross-Claim" for a declaratory judgment that Reid was not an insured under its policy and that Aetna was not liable for the Union County judgment. Mrs. Hatridge moved to remand; Mr. Hatridge and Reid moved to dismiss the "Counter Claim and Cross-Claim."

9. On October 10, 1967, Aetna on its part instituted a federal court action in the Western District of Arkansas against Mr. and Mrs. Hatridge and Reid for a declaration of rights under the policy. The Hatridges and Reid moved to dismiss that suit on the ground that its subject matter was identical to that of her suit against Aetna. Aetna moved for summary judgment under Rule 56, Fed.R.Civ.P., supporting its motion with affidavits, and asserting that there was no genuine issue as to any material fact. The defendants responded asserting only that Aetna's motion was premature.

10. Chief Judge Harris, with consent, heard the cases together. Counsel for the Hatridges conceded that on the merits, and until an Arkansas state court had ruled contrarily, the federal district court was "completely controlled by the Bryan decision." After the hearing the court filed one memorandum opinion concerning both matters. It concluded to grant Aetna's motion for summary judgment in its case, to deny Mrs. Hatridge's motion to remand her case, and to dismiss her case with prejudice. Aetna Cas. & Sur. Co. v. Hatridge, 282 F.Supp. 604 (W.D.Ark.1968).

---

1. This is an obvious and conservative endeavor to stay below, by two cents, the amount now required for federal diversity jurisdiction. 28 U.S.C. § 1332(a) specifies that federal jurisdiction attaches when the matter in controversy "exceeds" the sum or value of $10,000, exclusive of interest and costs.

11. Judgments were entered accordingly. In Mrs. Hatridge's case she appeals; this is our No. 19,348. In Aetna's case all three defendants appeal; this is our No. 19,349. With counsel conceding that Mr. Hatridge is concluded by this court's decision in *Bryan*, only Mrs. Hatridge, of the three appellants, has filed a brief in No. 19,349.[2]

*The appeal in Aetna's declaratory judgment action (No. 19,349).*

■ The federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, adopted in 1948, did not create new federal jurisdiction. It merely added a remedy. Consequently, the usual jurisdictional requirements must be met in order to have declaratory relief under the Act. Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 493, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); Home Ins. Co. of New York v. Trotter, 130 F.2d 800, 803 (8 Cir. 1942); Hardware Mut. Cas. Co. v. Schantz, 178 F.2d 779, 780 (5 Cir. 1949).

■ Here diversity of citizenship is established. So, too, is the jurisdictional amount, for Aetna's coverage to Ford, and consequent exposure, was in excess of $100,000, for each person injured in any one accident, and the Hatridge default judgment against Reid, although broken down into two amounts, was for $60,000. See Hawkeye-Security Ins. Co. v. Davis, 277 F.2d 765, 767 (8 Cir. 1960).

This would ordinarily take us to the secondary issue, namely, whether the district court properly exercised its discretion in rendering a declaratory judgment. See, for example, Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952); Zemel v. Rusk, 381 U.S. 1, 19, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). As has been noted, the court resolved the discretionary question in favor of its exercise. No claim is made on appeal that its so doing was an abuse of discretion. That issue, therefore, is not before us.

■ The arguments advanced by Mrs. Hatridge in the declaratory judgment appeal are only that she reduced her claim against Reid to a judgment; that she sues on that judgment in a new cause of action, and no longer as a claim for consortium; and that Aetna is estopped from asserting in the new action any defense it possessed but failed to assert in the original damage action.

Mrs. Hatridge has mistakenly analyzed the legal situation. Her argument would be appropriately directed to Reid if he were the one seeking declaratory relief here. His failure to assert a defense in the suit against him would prevent him from asserting that defense in a proceeding to enforce the judgment Mrs. Hatridge obtained. The cases cited by Mrs. Hatridge so hold. Milwaukee County v. M. E. White Co., 296 U.S. 268, 275, 56 S.Ct. 229, 80 L.Ed. 220 (1935); Indemnity Ins. Co. of North America v. Smoot, 80 U.S.App.D.C. 287, 152 F.2d 667, 669, 163 A.L.R. 498 (1945), cert. denied, 328 U.S. 835, 66 S.Ct. 981, 90 L.Ed. 1611; Dickson v. Wilkinson, 44 U.S. (3 How.) 57, 61, 11 L.Ed. 491 (1845); Dimock v. Revere Copper Co., 117 U.S. 559, 566, 6 S.Ct. 855, 29 L.Ed. 994 (1886); McGill v. Robbins, 231 Ark. 411, 329 S.W.2d 540, 542 (1959).

Her argument would have force here if the default judgment which she obtained were one against Aetna rather than against Reid or if Aetna had appeared in the state court action against Reid and had raised the issue of coverage and had lost it. But Aetna, although requested so to do, did not appear in that action and the issue was not raised and resolved. Aetna is not even mentioned in the default judgment. The fact that Aetna was requested to defend the state court action against Reid and refused so to do does not work an estoppel against Aetna on the issue of coverage when the judgment obtained did not depend upon the resolution of that issue. The Hatridge judgment against Reid was conclusive as to the issue of the neg-

2. For another aspect of this overall litigation see Reid v. Ford, Bacon & Davis Constr. Corp., 405 F.2d 861 (8 Cir. 1969).

ligence of Reid. It was not conclusive as to whether Hatridge was in the course of his employment with Ford at the time of his injury. It is the absence of the latter which would lead to Aetna's liability and it was in no way an issue in the Hatridge-Reid lawsuit.

The cases which Mrs. Hatridge cites do not possess the broad significance she claims for them. These are: Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712 (1896) (the defendant gas company had a duty to keep its gas boxes in working order; the Supreme Court said, 161 U.S. at 333, 16 S.Ct. at 570, in distinguishing another case, "But in that case the liability of the city rested on actual notice of the defect in the street and not on implied negligence based on the continued existence of the defect which caused the injury; therefore the essential fact on which the judgment against the city rested did not as a legal consequence imply negligence on the part of Robbins"); Maryland Cas. Co. of Baltimore v. Sturgis, 198 Ark. 574, 129 S.W.2d 599, 123 A.L.R. 704 (1939) (initial suit was against the plaintiff's employer and the plaintiff's recovery depended on being an employee; the employer then sued its insurer whose coverage excluded employees; the insurer's contention that the former judgment was decisive was upheld); B. Roth Tool Co. v. New Amsterdam Cas. Co., 161 F. 709 (8 Cir. 1908) (essentially similar facts; this court stated the applicable standard:

> "But, when the liability over is not as broad as the original liability, the plaintiff in the suit to recover over if he relies on the adjudication made in the former case must show that the very ground of liability against the indemnitor was found to exist and was necessarily adjudicated in the original suit. The estoppel created by the first judgment cannot extend beyond the questions necessarily determined by it." 161 F. at 711–712).

See also Aetna Cas. & Sur. Co. v. Hase, 390 F.2d 151, 152–153 (8 Cir. 1968);

Sweeney v. Frew, 318 Mass. 595, 63 N.E.2d 350 (1945); 1B Moore's Federal Practice par. 0.405[9] at 774 (2d ed. 1965). The emphasis in Moore, and hence in Hase which quoted Moore, is "as to all issues that were adjudged." To repeat: all that was adjudged in the default action against Reid was the issue of Reid's negligence. The issue of Aetna's responsibility for Reid's negligence was not adjudged. Thus this court's pronouncements in Roth Tool, over 60 years ago, are pertinent here.

■ Moreover, Rule 8(c), Fed.R.Civ. P., classifies estoppel as an affirmative defense and one to be pleaded. It was not pleaded here, was not called to the attention of the district court, and was not an issue passed upon by that court. That being so, the defense of estoppel cannot be raised on appeal. Nostromo, Inc. v. Fahrenkrog, 388 F.2d 82, 85 (8 Cir. 1968); Peacock & Peacock, Inc. v. Stuyvesant Ins. Co., 332 F.2d 499, 504–505 (8 Cir. 1964); Wackerle v. Pacific Employers Ins. Co., 219 F.2d 1, 7, 52 A.L.R.2d 814 (8 Cir. 1955), cert. denied, 349 U.S. 955, 75 S.Ct. 884, 99 L.Ed. 1279.

Standing alone, therefore, and apart from the action instituted earlier by Mrs. Hatridge against Aetna in the state court, federal jurisdiction existed for Aetna's declaratory judgment action and Judge Harris' decision in that case was correct.

*The appeal in Mrs. Hatridge's action against Aetna (No. 19,348).*

It is Mrs. Hatridge's position that the district court erred in refusing to remand her case to the state court. What she obviously desires is to have an Arkansas jury pass upon the question whether, at the time of the accident, her husband was in the course of his employment with Ford within the policy's definitional exclusion. We have no way of knowing whether an Arkansas state court would submit that issue to a jury or, if it did, how the jury would decide. Our decision in *Bryan* was that, on the basis of decided Arkansas cases, Judge Harris

did not err when he held that the policy's exclusion, as a matter of law, freed Aetna from liability for Reid's negligence and for the defense of the Bryan action against Reid.

Mrs. Hatridge argues that she, as plaintiff, may waive a part of the recovery to which she is entitled and thereby avoid a removal to federal court; that the "matter in controversy", within the meaning of 28 U.S.C. § 1332(a), is to be determined from the plaintiff's standpoint; that she has waived all rights to recover anything in excess of $9,999.99; that this is the only amount in controversy; that it does not exceed $10,000; that there is no federal jurisdiction; and that the situation is not changed by Aetna's cross complaint against her husband and Reid.

We hold that federal jurisdiction is present with respect to Mrs. Hatridge's suit, that the case was properly removed, and that the district court's refusal to remand was not error.

Mrs. Hatridge is correct when she points out that the phrase "matter in controversy" in § 1332(a) is usually viewed from the standpoint of the plaintiff. When the controversy is over a stated sum as for example, liquidated damages to the plaintiff, there is no problem, for what the plaintiff seeks to obtain and what the defendant seeks to retain are one and the same. 1 Moore's Federal Practice par. 0.91[1], at 826 (2d ed. 1964). Yet there are situations where the value of what the plaintiff seeks is not the same as the value of what the defendant stands to lose if the plaintiff is successful. Even in this situation judicial comment is frequently to the effect that the amount in controversy is to be determined from the viewpoint of the plaintiff. For example:

> "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith" [footnotes omitted]. Saint

Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

These statements are usually uttered in the face of a challenge to the good faith character of the amount claimed by the plaintiff.

It has been recognized, too, that where the plaintiff seeks only the recovery of money it is possible for him to defeat removal by the expedient of suing for less than the jurisdictional amount unless for some reason his attempted waiver of the balance is legally ineffective. Saint Paul Mercury Indem. Co. v. Red Cab Co., supra, 303 U.S. at 294, 58 S.Ct. 586; Erwin v. Allied Van Lines, Inc., 239 F.Supp. 144, 147 (W.D.Ark.1965); Peacock v. American Ins. Co., 253 F. Supp. 624 (N.D.Fla.1966); 1A Moore's Federal Practice par. 0.157[6], at 259 (2d ed. 1965).

■ It is the situation at the time of removal which is determinative. 1 Moore's Federal Practice par. 0.91[3] (2 ed. 1964). A subsequent change, such as the plaintiff's post-removal voluntary reduction of his claim to less than the jurisdictional amount, does not defeat federal jurisdiction acquired through removal. Saint Paul Mercury Indem. Co. v. Red Cab Co., supra, 303 U.S. at 289–290, 58 S.Ct. 586; Corcoran v. Pan American World Airways, Inc., 194 F. Supp. 840 (D.Mass.1961).

■■ Where, as here, federal diversity jurisdiction is asserted by the defendant pursuant to the removal statute, 28 U.S.C. § 1441(a), jurisdiction is customarily geared to original jurisdiction under § 1332(a). 1A Moore's Federal Practice par. 0.157[6], at 257 (2d ed. 1965). The party asserting federal jurisdiction, here Aetna, then has the burden of establishing that the required amount is in controversy. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); 1 Moore's Federal Practice par. 0.92[3.–2] (2d ed. 1964); 1A Moore's Federal Practice par. 0.157[6], at 258.

There are, however, instances where the courts have measured the "matter in controversy" from the standpoint of the defendant. Thus we have broad statements directed to either party to the litigation:

"It is conceded that the pecuniary value of the matter in dispute may be determined * * * in some cases * * * by the pecuniary result to one of the parties immediately from the judgment." Smith v. Adams, 130 U.S. 167, 175, 9 S.Ct. 566, 569, 32 L.Ed. 895 (1889).

"The pleading and the evidence * * * must show such required amount to be of the value of the particular and limited thing sought to be accomplished by the action. The value of the 'thing sought to be accomplished by the action' may relate to either or any party to the action" [citations omitted]. Ridder Bros. v. Blethen, 142 F.2d 395, 399 (9 Cir. 1944).

Government Employees Ins. Co. v. Lally, 327 F.2d 568, 569 (4 Cir. 1964). There are specific holdings, favorable to federal jurisdiction, where the defendant's posture yields the jurisdictional amount. Ridder Bros. v. Blethen, supra; Pennsylvania Ins. Co. v. Allstate Ins. Co., 226 F.Supp. 99 (W.D.Va.1964); Shipe v. Floral Hills, Inc., 86 F.Supp. 985, 987 (W.D.Mo.1949). Professor Wright has recognized this line of authority and has observed that "this seems the desirable rule, since the purpose of a jurisdictional amount, to keep trivial cases away from the court, is satisfied where the case is worth a large sum to either party." C. Wright, Federal Courts § 34, at 100 (1963).

█ This approach, we feel, is particularly appropriate where the values to the parties are not the same and where the defendant has removed the action. In that context Judge Phillips has said that "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." Ronzio v. Denver and R. G. W. R. R., 116 F.2d 604, 606 (10 Cir. 1940).

Although this court often has spoken routinely in terms of the plaintiff's viewpoint, or of the value of the right which the plaintiff seeks to protect, see, for example, Federated Mut. Implement & Hardware Ins. Co. v. Steinheider, 268 F.2d 734, 737–738 (8 Cir. 1959), and Bishop Clarkson Memorial Hosp. v. Reserve Life Ins. Co., 350 F.2d 1006, 1008 (8 Cir. 1965), we, too, have recognized the possibility of utilizing the defendant's risk as a measure of federal jurisdiction.

"[I]t is the amount or value of that which the complainant claims to recover, or the sum or value of that which the defendant will lose if the complainant succeeds in his suit, that constitutes the jurisdictional sum or value of the matter in dispute, which tests the jurisdiction * * *." Cowell v. City Water Supply Co., 121 F. 53, 57 (8 Cir. 1903).

Elliott v. Empire Natural Gas Co., 4 F.2d 493, 497 (8 Cir. 1925); Miller v. First Service Corp., 84 F.2d 680, 681, 109 A.L.R. 1179 (8 Cir. 1936); Hedberg v. State Farm Mut. Auto. Ins. Co., 350 F.2d 924, 928 (8 Cir. 1965). Chief Judge Henley in Inman v. Milwhite Co., 261 F.Supp. 703, 707–708 (E.D.Ark. 1966), took the same approach. This court affirmed his decision, 402 F.2d 122 (8 Cir. 1968); although the parties there did not raise the jurisdictional question on appeal, we, presumably, would have raised it ourselves had we been at all concerned with the district court's analysis.

One may, of course, observe that, although the amount Mrs. Hatridge now asserts is less than $10,000 (assuming that her waiver of the excess is effective), the amount of liability which an adverse judgment would entail for Aetna, in the event Mrs. Hatridge prevails in her state court action, is far greater than $10,000. Nevertheless, one must confess that. the line of cases cited, where the focus has been on the viewpoint of the defendant, does not afford much definitive assistance here. This is because those cases nearly all meas-

ure the contrasting values as they exist between the opposing parties in the lawsuit, rather than the overall consequences to the defendant. Here all that Mrs. Hatridge purportedly claims is a sum less than $10,000 and this is all, she asserts, which would be owing from Aetna to her. Aetna's greater liability flows from the claim made by Mr. Hatridge. Compare Franklin Life Ins. Co. v. Johnson, 157 F.2d 653 (10 Cir. 1946), with Motorists Mut. Ins. Co. v. Simpson, 404 F.2d 511 (7 Cir. 1968), cert. denied, 394 U.S. 988, 89 S.Ct. 1470, 22 L.Ed.2d 763.

Accordingly, we do not feel free to place particular reliance, in our present decision, upon the cases, such as *Ronzio*, which utilize the defendant's standpoint approach. Instead, we rest our decision upon the nature of Mrs. Hatridge's claim and its inescapable dependency upon that of her husband.

In Arkansas, as in some other jurisdictions, a suit to recover for loss of consortium is characterized as derivative. It does not stand independently but is contingent upon the success of the injured spouse's action. Thus in Sisemore v. Neal, 236 Ark. 574, 367 S.W. 2d 417 (1963), a consortium suit was dismissed where an adverse verdict had been obtained in the damage suit. In Nelson v. Busby, Ark., 437 S.W.2d 799, 803 (1969), an award for loss of consortium was reduced by the percentage of the injured person's comparative negligence. And this court has held that where the injured person's suit is barred under the statute of limitations, the consortium claim is also barred. Tollett v. Mashburn, 291 F.2d 89, 93 (8 Cir. 1961).

Further, Arkansas' direct action statute, § 66–4001, upon which Mrs. Hatridge rests her lawsuit, speaks specifically in terms of subrogation. This is, in theory, an equitable approach. Her rights against Aetna, therefore, equate with those of the insured, that is, in the present context, with those of Reid. Maryland Cas. Co. v. Waggoner, 193 Ark. 550, 101 S.W.2d 451, 453 (1937);

Great American Ins. Co. v. Ratliff, 242 F.Supp. 983, 988 (E.D.Ark.1965).

With all this, we sense something less than complete appeal in the endeavor of the consortium spouse, here Mrs. Hatridge, to separate her consortium judgment from the judgment her husband has obtained for the injury he sustained.

We conclude that the Hatridge claims are so intertwined and so interdependent that federal jurisdiction of the primary claim appropriately promotes and supports federal jurisdiction of the other or, perhaps more accurately, prevents separation of the two for forum shopping purposes.

There are, however, additional considerations. Counsel, who represented the Bryans as well as the Hatridges, deliberately chose to bring his first action against Aetna in the federal court. This, by our decision in *Bryan*, was unsuccessful. He now seeks to forum shop in the hope that a different result will be forthcoming on the state side which will nullify the otherwise adverse federal precedent.

Additionally, we feel that the doctrine of pendent jurisdiction, which Judge Harris concluded was applicable, is surely supportive. Certainly, in accord with the standards announced by the Supreme Court in United Mine Workers of America v. Gibbs, 383 U.S. 715, 725–726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), we have here in Aetna's suit a claim appropriately described as a federal one; an asserted state claim in Mrs. Hatridge's suit; subject matter jurisdiction of the federal claim in the federal court; "a common nucleus of operative fact" for both; and claims which in character are such that they would rightfully be expected to be tried in one judicial proceeding. Indeed, the injury claim and the consortium claim are usually tried together; the Hatridges' action against Reid is illustrative. Although *Gibbs* concerned claims possessed by a single plaintiff, the decision clearly indicates that "there is *power* in federal courts to hear the whole." 383 U.S. at 725, 86 S.Ct. at 1138. *Gibbs* goes on to say that

pendent jurisdiction is a doctrine of discretion and not of the plaintiff's right. "Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them * * *." 383 U.S. at 726, 86 S.Ct. at 1138. These are present here.

A number of cases, most of them out of the Third Circuit, although perhaps somewhat colored because of a Pennsylvania statute or rule of court requiring redress in a single suit, have applied the doctrine of pendent jurisdiction in two-plaintiff or single plaintiff-dual capacity situations. Wilson v. American Chain & Cable Co., 364 F.2d 558, 564 (3 Cir. 1966); Borror v. Sharon Steel Co., 327 F.2d 165, 172–174 (3 Cir. 1964); Obney v. Schmalzreid, 273 F.Supp. 373 (W.D. Pa.1967); Newman v. Freeman, 262 F. Supp. 106 (E.D.Pa.1966); Raybould v. Mancini-Fattore Co., 186 F.Supp. 235 (E.D.Mich.1960); Wiggs v. City of Tullahoma, 261 F.Supp. 821 (E.D.Tenn. 1966). See Jacobson v. Atlantic City Hospital, 392 F.2d 149, 153–155 (3 Cir. 1968). And Morris v. Gimbel Bros., 246 F.Supp. 984 (E.D.Pa.1965), involved the precise injury-consortium combination with which we are here confronted.

The Ninth Circuit, however, has refused to follow the Third Circuit precedent and has rejected pendent jurisdiction over a consortium claim. Hymer v. Chai, 407 F.2d 136, 137–138 (9 Cir. 1969). The court felt that it was bound by its earlier decision in an non-consortium case. Takashi Kataoka v. May Dep't Stores Co., 115 F.2d 521 (9 Cir. 1940), cert. denied, 312 U.S. 700, 61 S.Ct. 739, 85 L.Ed. 1134. And Campbell v. City of Atlanta, 277 F.Supp. 395 (N.D. Ga.1967), presents a situation where a consortium suit for $9,999.99 was remanded despite the presence in the federal court of the husband's suit for damages in an amount exceeding the jurisdictional minimum. In *Campbell* the court observed that under Georgia law the two causes of action "are not the same"; that consolidation could not be compelled; that a judgment in one of the cases "would not be res judicata as to the other"; and that pendent jurisdiction is a doctrine of discretion and not of right.

The Ninth Circuit decision hangs upon a case decided 29 years ago, long prior to *Gibbs* but subsequent to Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), where the doctrine of pendent jurisdiction, although not referred to by that name, was given some vitality. The Georgia case may perhaps be distinguished on the ground of the obvious differences between the Georgia and the Arkansas law.

In any event, we find ourselves in sympathy with the Third Circuit approach for appropriate cases. It makes good sense; it avoids forum shopping and multiple actions; it tends to reduce costs for litigants; and it avoids the waste of already heavily burdened judicial time. We feel that a consortium suit, in the light of its stated character under Arkansas law, is ideal for the application of the doctrine. We apply pendent jurisdiction as a supportive ground for our conclusion here.

The judgments are affirmed.