**Dorothy M. COATNEY, Appellant,**

v.

**Robert L. BERKSHIRE and United States of America, Appellees.**

**No. 73–1741.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1974.

Decided July 22, 1974.

---

Thaine Q. Blumer, Kansas City, Mo., for appellant.

Bert C. Hurn, U. S. Atty., Robert G. Ulrich, Asst. U. S. Atty., Kansas City, Mo., and Neil R. Eisner, Trial Atty., Federal Aviation Administration, Washington, D. C., for appellees.

Before BRIGHT, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an appeal from a decision in favor of defendant-appellees in an action arising out of a mid-air collision of two light aircraft. It is contended that the finding of the trial court that the negligence of both pilots and not the control tower was the proximate cause of the collision is clearly erroneous. Appellant further urges that the trial court erred

in denying recovery under the Missouri Humanitarian Doctrine. We affirm.

Suit was brought by the widow of Homer E. Coatney, deceased, under the Missouri Wrongful Death Statute, § 537.080 R.S.Mo.1969, V.A.M.S. The United States was joined as a defendant pursuant to the Tort Claims Act, 28 U. S.C. § 2671. The complaint alleged that employees of the Federal Aviation Administration (FAA), an agency of the United States, were negligent in several respects in authorizing the take-off of appellee Berkshire from the Fairfax Airport in Kansas City, Kansas, and in failing to warn Coatney, who was approaching the airport intending to land, of the approach of Berkshire's aircraft. It was further alleged that Berkshire was negligent in the operation of his aircraft.

The trial court found that the two aircraft collided approximately one and one-half miles northwest of the Fairfax Airport[1] at approximately 5:31 P.M.; at the time the weather was reported as clear, visibility 15 miles, wind light and variable; official sunset was at 6:50 P. M.; both pilots were operating under Visual Flight Rules (VFR)[2]; both were holders of Private Pilot Certificates; both had substantial flying experience; and both were in command of their respective aircraft.

The record indicates that Berkshire was cleared for take-off on runway 35 at Fairfax Airport at approximately 5:28, three minutes before the collision. At approximately 5:29 Coatney radioed the local controller he was "approaching Tank Inbound." (The Tank intersection was situated 2.5 miles due north of the north end of runway 35.) The controller instructed Coatney to "break off at the Tank" (meaning the pilot should make a right turn and proceed southwest to stay clear of the traffic pattern)

[1]. Berkshire, who survived the crash, stated that he had climbed to and leveled off at 1500 feet above mean sea level (about 155 feet above the established traffic pattern for the subject aircraft, whic was 600 feet above ground level) when the collision occurred.

[2]. 14 C.F.R. § 91.105.

and to notify him when his aircraft reached the Tank intersection. Ten seconds later Coatney reported, "I just showed Tank intersection, I'm a little bit west about even with the bridge." The controller then instructed, "Fly your downwind west of the bridge and report there for sequence; I'll have traffic ahead of you." Coatney acknowledged, "Will do." This was his last transmission.

Plaintiff's principal allegation of negligence on the part of the controller is that he failed to warn either pilot of the converging courses of their aircraft.

The Fairfax Airport control tower was staffed by employees of the Federal Aviation Administration whose job it was to facilitate the movement of traffic on and around the airport.

At the time of the accident and at material times prior thereto both pilots were operating within the Fairfax Airport traffic area [3] and had the duty to remain in radio contact with the controller and to monitor transmissions on the tower radio frequency. 14 C.F.R. § 91.-87. Records prior to the accident indicate that from the time Berkshire was cleared for take-off (three minutes before this collision) until the collision the controller spoke to at least eight separate aircraft and there were 37 separate transmissions between the various aircraft and the tower. While the controller's primary duty is to establish the sequence of arriving and departing aircraft, he cannot be expected to give constant and exact traffic information to all aircraft in the airport traffic area.

■■ It is well settled law that under VFR conditions the primary responsibility for safe operation of the aircraft rests with the pilot, regardless of the traffic clearance. In the instant case, each pilot was directly responsible for, and had the final authority as to the operation of his aircraft. American Airlines v. United States, 418 F.2d 180, 193 (CA5 1969); United Airlines, Inc. v. Wiener, 335 F.2d 379, 389 (CA9 1964); United States v. Miller, 303 F.2d 703, 709–710 (CA9 1962); 14 C.F.R. § 91.3. Under Visual Flight Rules, and in Visual Flight Rule weather conditions, it is the pilot, and not the air traffic controller, who has the primary responsibility for preventing collisions between aircraft. Tilley v. United States, 375 F.2d 678, 682–684 (CA4 1967); American Airlines v. United States, supra; United States v. Miller, supra; United States v. Schultetus, 277 F.2d 322 (CA5 1960); Hamilton v. United States, 497 F.2d 370 (CA9 1974) aff'g, 343 F.Supp. 426 (N. D.Cal.1971).

Here, in the controller's last instruction, which Coatney acknowledged, he was told to report at the bridge for sequence and warned, "I'll have traffic ahead of you." Coatney was thus alerted that other aircraft would be ahead of him as he entered the traffic pattern in the vicinity of the bridge. The controller also had a right to expect that both pilots would monitor the tower and would be familiar with the relative position of traffic in the area.

■ The trial court considered all the evidence and made findings that the air traffic controller defendants were not negligent and that each of the pilots was contributorily negligent for failure to keep an adequate lookout. Upon our study of the record, we cannot say these findings are clearly erroneous and so we affirm the trial court.

Plaintiff further contends that notwithstanding Coatney's negligence she is entitled to recover under the Missouri Humanitarian Doctrine. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482 (1924); Rudloff v. Johnson, 267 F.2d 908 (CA3 1959); Turbett v. Thompson, 363 Mo. 577, 252 S.W.2d 319 (1952).

3. 14 C.F.R. § 1.1, at the time the accident occurred, defined an "airport traffic area" as "that airspace within a horizontal radius of five statute miles from the geographical center of any airport at which a control tower is operating, extending from the surface up to, but not including, 2000 feet above the surface."

■ We agree with the trial court that there is nothing in this record to indicate that the air controller, in the exercise of ordinary care, should have observed Coatney in a "position of imminent peril" at any time prior to the accident. The Missouri Humanitarian Doctrine is not applicable to the facts of this case.

Affirmed.