Ronald David KACK, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 1–75–386.

United States District Court,
D. Minnesota,
First Division.

June 6, 1977.

Michael J. Kutsko, San Francisco, Cal.,
and Joe E. Thompson, Willmar, Minn., for
plaintiff.

Robert G. Renner, U.S. Atty., Donald F.
Paar, Asst. U.S. Atty., Minneapolis, Minn.,
Kenneth N. Weinstein, Federal Aviation
Administration, Washington, D.C., for de-
fendant.

DEVITT, Chief Judge.

In this lawsuit brought under the Federal
Tort Claims Act, plaintiff alleges that the
crash of the Piper Cherokee 140 he was
piloting, FAA No. N1549J, was caused by
the negligence of the air traffic controllers,
employees of the Federal Aviation Authori-

ty, on duty at the Rochester, Minnesota Municipal Airport. He seeks to recover from the government money damages as compensation for the serious personal injuries he suffered in that crash. The government denied liability, contending that the crash was caused by the negligence of plaintiff.

In his complaint, plaintiff named as defendants the government, the flight school he attended and two of its instructors. By an earlier order, the court dismissed all defendants except the government because of a lack of subject matter jurisdiction. Clerk's entry no. 131. The case against the government was bifurcated and the liability phase was tried to the court on April 11–14, 1977. Seven witnesses testified and several depositions were received. Both sides submitted pretrial briefs and, after the close of the evidence, proposed findings of fact and conclusions of law.

The evidence indicates that plaintiff was on a long, low final approach when he encountered wake turbulence generated by a landing Northwest Boeing 707 which was immediately ahead of him in the pattern. Wake turbulence is caused by vortices, which are in effect vertical cyclones, trailing behind each wingtip. Each vortex is caused as the air from the area of relative high pressure under the wing spills up and over the end of the wing to the area of relative low air pressure above the wing. Although this phenomenon is caused by all aircraft under all operating conditions, it is especially dangerous when caused by heavy jet aircraft operating at slow speeds with wings in a "dirty" configuration. This encounter, according to the testimony of witnesses for both sides, was undoubtedly the cause of the crash.

Plaintiff contends that he encountered this wake turbulence because the air traffic controllers on duty negligently (1) failed to give him timely warning of the possibility of an encounter with wake turbulence, (2) failed to provide adequate spacing between the Northwest 707 and the airplane he was

piloting, and (3) filed to warn plaintiff of his precariously low altitude. Each of these contentions was supported by one or more of plaintiff's expert witnesses. The government responded by contending that plaintiff had more than adequate warning of the possibility of wake turbulence, that plaintiff, not the controllers, was responsible for maintaining spacing under the prevailing VFR condition and that the accident was caused by plaintiff's failure to properly handle his aircraft under the circumstances. It had each of these contentions bolstered by the testimony of an expert witness.

At the time of the accident in 1973, plaintiff was a 19 year old student pilot with 32 hours of flight time. The accident occurred while he was on his first solo cross country flight from his home field at Winona to Rochester. He was practicing touch and go landings at the Rochester Airport. Roger Glebe, a developmental (student) controller was on duty at Rochester and was supervised by Walter Mayer. Kack crashed while attempting his second touch and go, approximately 2500 feet short of the threshold of the runway.

From all the exhibits and testimony submitted at trial, the court concludes that plaintiff crashed when he encountered wake turbulence because he was too low on final approach to the runway. He negligently failed to stay above the flight path of the Northwest 707. This failure to utilize a standard wake turbulence avoidance technique was the principal cause of the accident.

Plaintiff's contention that air traffic controllers are required to warn pilots of the existence of wake turbulence conditions while correct—*See Dickens v. United States*, 545 F.2d 886 (5th Cir. 1977) —does not permit recovery here. The transcript of the radio transmissions between the Rochester Control Tower and the aircraft in the landing pattern show that Kack was cleared to land and that he was given the required wake turbulence warning.

| Time (GMT) | IDENT. | TRANSMISSION |
|---|---|---|
| 2105:59 | TWR | FOUR NINE JULIET [Kack] DO YOU HAVE THE SEVEN OH SEVEN IN SIGHT? |
| 2106:01 | 49J | FOUR NINE JULIET, I SURE DO |
| 2106:03 | TWR | FOUR NINE JULIET, YOU'RE NUMBER TWO, FOLLOW HIM |
| * * * | | * * * * |
| 2107:18 | TWR | CHEROKEE FOUR NINE JULIET, CLEARED FOR TOUCH AND GO, RUNWAY ONE THREE, CAUTION WAKE TURBULENCE, LANDING HEAVY SEVEN OH SEVEN [2107:25] |
| 2107:30 | ? | HE'S GONE IN |

Plaintiff contends that the wake turbulence warning, coming only five seconds before someone noticed he had crashed, was inadequate. The testimony indicated that plaintiff was on a long low final approach when he encountered the wake turbulence. In fact he was too low to employ the standard wake avoidance technique of coming in high and slipping to a landing beyond the touchdown point of the aircraft causing the wake turbulence. There was also testimony that if plaintiff had maintained proper altitude he would not have entered air space where wake turbulence could have been a problem until much later when he was closer to the threshold of the runway. Thus, the wake turbulence warning would have been timely but for plaintiff's negligence. In addition, plaintiff had adequate knowledge that he was to follow a heavy 707 in the landing pattern and his instructors testified that he had been schooled in all aspects of wake turbulence—cause, effect and avoidance.

 Plaintiff next contends that the controllers negligently failed to provide adequate spacing between his aircraft and the Northwest 707. This contention fails for two reasons. First, plaintiff has not demonstrated to the court's satisfaction that an air traffic controller has a duty to space landing aircraft operating under visual flight rules. Because he is in the best position to do so, spacing is principally the pilot's responsibility—the "see and avoid" concept prevails.

 Second, even assuming a duty to space aircraft, plaintiff has not demonstrated that the controllers breached this duty. There was expert testimony which clearly demonstrated that if plaintiff had maintained proper altitude, this tragic accident could have been avoided. Thus, the spacing was adequate for aircraft at proper altitudes.

 Finally, plaintiff contends that the controllers were aware, or should have been aware of his precariously low altitude and negligently failed to warn him.[1] The court admits it is troubled by this aspect of the case. Perhaps it would have been wise, given the fact that plaintiff was a student pilot, for the controllers to adopt a "mother hen" attitude toward him. However, they were not required to do so. Kack, even though a student, was pilot in command, and therefore was primarily responsible for the safe operation of his aircraft.

In conclusion, the evidence presented in this case demonstrates that this crash occurred because of plaintiff's negligence. While the practices and procedures followed by air traffic controllers may not be above criticism in all respects, following them, as the controllers in this case did, does not constitute negligence. Even if it does, in this case it would only account for a small percentage of the total fault.

Therefore, the court directs that the clerk enter judgment for defendant. These expressions shall constitute the court's findings of fact and conclusions of law.

---

1. Controller Mayer observed plaintiff on base leg and he "appeared to be low." Controller Glebe did not recall whether he actually saw plaintiff coming in low.