Ronald David KACK, Appellant,

v.

UNITED STATES of America, Appellee.

No. 77–1563.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1977.

Decided Feb. 15, 1978.

Ronald J. Mullin, San Francisco, Cal. (argued), Michael J. Kutsko and Patrick T. Hall, San Francisco, Cal., Joe E. Thompson, Willmar, Minn., on brief, for appellant.

Donald F. Paar, Asst. U. S. Atty. (argued), Andrew E. Danielson, U. S. Atty., Minneapolis, Minn., and Kenneth N. Weinstein, Litigation Div., Federal Aviation Admn., Washington, D. C., on brief, for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and SCHATZ, District Judge.[*]

BRIGHT, Circuit Judge.

Ronald David Kack, a student pilot, brought this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. (1970),

seeking damages against the United States for negligent conduct of the traffic controllers at the Rochester, Minnesota, airport. Kack alleged that the controllers, employees of the Federal Aviation Authority, (1) failed to provide him with adequate and timely notice of the existence of wake turbulence that caused his aircraft to crash as he was attempting to land it; (2) failed to provide enough space between his aircraft and the aircraft that preceded him in landing and caused the wake turbulence; and (3) failed to warn him of his precariously low altitude in relation to the wake turbulence hazard created by the other plane. The district court denied any recovery,[1] and Kack appeals.[2] We affirm the district court's decision.

The appellant contends that under the undisputed evidence the district court erred in concluding that:

(1) While air controllers are required to warn pilots of the existence of wake turbulence, the required warning was given. The warning would have been timely but for plaintiff's negligence in failing to maintain the proper altitude. [*Kack v. United States*, 432 F.Supp. 633, 634–35 (D.Minn.1977).]

(2) The controllers did not fail any duty to provide adequate spacing between Kack's aircraft and the aircraft that landed before him. The plaintiff did not demonstrate that an air traffic controller has a duty to space landing aircraft operating under visual flight rules. Even assuming such a duty, however, the controllers did not breach it. If the plaintiff had maintained a proper altitude, the accident would have been avoided. [*Id.* at 635.]

(3) The controllers had no special duty to warn the plaintiff of his precariously low altitude. Kack, the pilot, even though a student, was primarily responsi-

---

[*] ALBERT G. SCHATZ, United States District Judge, District of Nebraska, sitting by designation.

1. Chief Judge Devitt's opinion is reported at 432 F.Supp. 633 (D.Minn.1977).

2. The appendix to this appeal consists solely of various information manuals and other data concerning the duties of air traffic controllers and pilots, an accident report of the air traffic controller on duty at the time of the accident, and a transcript of recorded conversations between Rochester control tower personnel and various aircraft preceding Kack's accident.

ble for the safe operation of his aircraft. [*Id.*]

I.

The undisputed facts disclose that on December 16, 1973, Kack had been instructed to proceed with a planned touch and go landing, an air training exercise. He was to land immediately after a Northwest Orient Airlines Boeing 707, which was ahead of Kack in the landing pattern.

At approximately 3:05 p.m., the control tower advised Kack that he was number three to land and would follow a "heavy seven oh seven" aircraft. A minute later the control tower asked him if he had the 707 in sight, and Kack responded: "I sure do." A little over a minute later, about the time the Northwest aircraft had crossed the runway threshold, the tower issued the following communication to Kack:

> Cherokee four nine Juliet, cleared for touch and go, runway one three. Caution wake turbulence, landing heavy seven oh seven.

Twelve seconds later, Kack's plane vanished from the view of the controllers. Subsequently, he was found in the wreckage of his plane about 2,500 feet from the threshold of the runway.

The evidence established that Kack was on a low approach to the runway when he encountered wake turbulence[3] created by the slow-moving, heavy 707 that had landed before him. The turbulence caused him to lose control of his aircraft, and he crashed.

II.

As indicated *supra*, the district court determined that the pilot bore principal responsibility to see and avoid the hazard of wake turbulence. In doing so, the court was in accordance with our earlier decision in *Coatney v. Berkshire*, 500 F.2d 290, 292 (8th Cir. 1974). In *Coatney*, we declared:

> It is well settled law that under VFR [Visual Flight Rule] conditions the primary responsibility for safe operation of the aircraft rests with the pilot, regardless of the traffic clearance.

Traffic controllers do have some duty of due care towards the pilots and aircraft they direct, and situations may arise where the duty is violated. *See, e. g., Yates v. United States*, 497 F.2d 878 (10th Cir. 1974) (controllers liable for crash of plane that encountered wake turbulence because they negligently ordered plane to fly close to much heavier plane creating turbulence). This is not such a situation, however; we believe that the district court correctly delineated the duty of the air traffic controllers to the pilot.

We also think that the court was correct in finding either no violation of the limited duty of due care owed by the controllers to the pilot or, under Minnesota's comparative negligence laws, a lesser degree of negligence by the controllers than by Kack, barring recovery by Kack. The court said in summary:

> In conclusion, the evidence presented in this case demonstrates that this crash occurred because of plaintiff's negligence. While the practices and procedures followed by air traffic controllers may not

---

**3.** Wake turbulence is created in the following fashion:

> Lift is generated by the creation of a pressure differential over the wing surfaces. The lowest pressure occurs over the upper wing surface and the highest pressure under the wing. This pressure differential triggers the roll up of the airflow aft of the wing resulting in swirling air masses trailing downstream of the wing tips. After the roll up is completed, the wake consists of two counter rotating cylindrical vortices. [Federal Aviation Administration, *Aircraft Wake Turbulence* 2 (Advisory Circular 90–23D, December 15, 1972.]

It creates a significant hazard for aircraft flying in its path:

> The vortices from large aircraft pose problems to encountering aircraft. For instance, the wake of these aircraft can impose rolling moments exceeding the roll control capability of some aircraft. Further, turbulence generated within the vortices can damage aircraft components and equipment if encountered at close range. The pilot must learn to envision the location of the vortex wake generated by large aircraft and adjust his flight path accordingly. [*Id.*]

be above criticism in all respects, following them, as the controllers in this case did, does not constitute negligence. Even if it does, in this case it would only account for a small percentage of the total fault.

We cannot say that this fact finding is clearly erroneous. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

The appellant demonstrated neither legal nor factual error in the trial court's determination. Accordingly, we affirm.[4]

---

4. Appellant in his brief also contends that the trial court erred in dismissing without prejudice the claims for recovery against defendants George Balon and Michael Moore, flight instructors for Kack. No independent federal jurisdictional ground existed for litigating the claims against these defendants because their joinder in the principal action would destroy diversity. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). While appellant argues that these actions are within the pendent jurisdiction of the court, we note that [t]he pendent jurisdiction concept applies only where the same parties are involved on the state and federal claims. It does not permit bringing in an additional party to respond to a state claim on the ground that that claim is closely related to the federal claim against an existing party. [C. Wright, *Law of Federal Courts* § 19, at 65 (2d ed. 1970) (footnote omitted).]