Eugene A. AUSLAND; Jack Towe; Philip Kurkowski; Oscar Bjerke; Gilman Bjerke; Robert Bjerke; and Allen Bjerke, Plaintiffs,

v.

UNITED STATES of America; United States Department of Agriculture; Agricultural Stabilization and Conservation Service; Commodity Credit Corporation; Robert Bergland, United States Secretary of Agriculture; James Williams, Deputy United States Secretary of Agriculture; Ray Fitzgerald, Director of the Agricultural Stabilization and Conservation Service, and Director of the Commodity Credit Corporation; South Dakota Wheat Growers Assn., in Andover, South Dakota; South Dakota Wheat Growers Assn., in Bristol, South Dakota; Bagley Grain Company, in Waubay, South Dakota; Bagley Grain Company, in Andover, South Dakota; Bradley Grain Company, in Bradley, South Dakota; Bunge Corporation, in Shawneetown, Illinois, Defendants.

Civ. No. 79–1046.

United States District Court, D. South Dakota, N. D.

April 16, 1980.

Thomas J. Nicholson, Abourezk, Shack & Mendenhall, Robert L. Mabee, Qualley, Larson & Jones, Sioux Falls, S. D., for plaintiffs.

Joseph H. Barnett, Siegel, Barnett, Schutz, O'Keefe, Jewett & King, Aberdeen, S. D., for defendant Bagley Grain Co. in Waubay and Andover, S. D.

Carleton R. Hoy, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for Bradley Grain Co.

Francis M. Smith, Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for defendant Bunge Corp.

John J. Ulrich, Asst. U. S. Atty., Sioux Falls, S. D., for All United States defendants and Chester A. Groseclose, Jr., Richardson, Groseclose, Kornmann & Wyly, Aberdeen, S. D., for defendant S. D. Wheat Growers in Andover and Bristol, S. D.

## MEMORANDUM OPINION

### FACTUAL BACKGROUND

DONALD J. PORTER, District Judge.

Plaintiffs, residents of Clark and Day Counties in South Dakota, were engaged in farming and livestock operations. In 1976, due to the drought, these counties requested assistance under the Emergency Livestock Feed Program (ELFP), administered by the United States Department of Agriculture (USDA), the Agricultural Stabilization and Conservation Service (ASCS), and the Commodity Credit Corporation (CCC). The CCC stored large quantities of oats in elevators throughout the United States, and some of these oats were consigned to the ASCS offices in Day and Clark Counties. These were stored in local elevators. Plaintiffs applied for aid under the ELFP, and oats from these consignments were sold to them by the ASCS. Plaintiffs allege that the oats became contaminated while "under the custody, control, responsibility and administration of the United States of America," due to omission of proper chemical control. Due to the use of these oats, plaintiffs allege, their cattle either died or became sick, causing them substantial losses.

The non-governmental defendants are elevators or grain companies that plaintiffs allege handled the oats involved, and were responsible for causing its contamination, or liable for breach of warranties that the oats were fit to feed livestock.

The United States and the non-governmental defendants have moved to dismiss. The United States contends that this suit is barred, as against it, by 28 U.S.C. § 2680(h). The non-governmental defendants have moved to dismiss because the court lacks jurisdiction over the subject matter as to them, since they are not of diverse citizenship from plaintiffs and because plaintiffs' claims against them do not arise under the Constitution or laws of the United States. The Government's motion is granted in part and denied in part. Those of the other moving parties are denied.

### ISSUES

I. Does the court lack jurisdiction over the non-governmental defendants?

II. Is the plaintiff's claim against the United States barred by the misrepresentation exception to the Federal Tort Claims Act?

I

*Jurisdiction Over the Non-Governmental Defendants.*

Jurisdiction in this case is alleged to be based upon the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b); 2401; 2671 through 2680. These sections give United States District Courts jurisdiction over claims against the United States and set the limits within which recovery may be had. The statutes appear to give the court subject matter jurisdiction over the action insofar as recovery is sought against the United States, unless some exception to liability under the FTCA appears.

No claims arising under the Constitution or laws of the United States, other than the above mentioned tort claim, are alleged in plaintiffs' original complaint or either of their amended complaints. 28 U.S.C. § 1331. Plaintiffs must, therefore, depend on a theory of either ancillary or pendent jurisdiction insofar as they claim some type of federal question jurisdiction, since federal courts are courts of limited jurisdiction and cannot exercise any jurisdiction not granted by the United States Constitution and the Congress. *Owen Equipment & Erection Co. v. Kroger,* 437

U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978).

Under these concepts, it is permissible for the court to exercise jurisdiction over certain parties or claims that might lie outside federal jurisdiction if brought separately. The ancillary concept developed historically as a means whereby a federal court could adjudicate the rights of all persons to a common fund or to a specific piece of property brought before the court in a case over which the court had jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 9–16, 96 S.Ct. 2413, 2418–2421, 49 L.Ed.2d 276 (1976). Persons with a claim to that fund or property were ·permitted to intervene, and the federal courts could resolve all claims to the property or fund, even though no independent jurisdictional base existed for all the parties. This doctrine has developed to the point that it is no longer limited to those cases which involve a fund or property, *see Moor v. County of Alameda*, 411 U.S. 693, 713–715, 93 S.Ct. 1785, 1797–1798, 36 L.Ed.2d 596 (1973); *Aldinger v. Howard, supra* 427 U.S. at 11–13, 96 S.Ct. at 2418–2419. The pendent jurisdiction doctrine, on the other hand, developed as a means whereby a plaintiff with a claim arising under the Constitution or laws of the United States could join to the federal claim a state law claim he might have, where the two claims were so closely related that they would ordinarily be disposed of in one lawsuit. *See Aldinger v. Howard, supra* at 6–9, 96 S.Ct. at 2416–2418. In *Moor, supra*, the Supreme Court indicated that there might be cases in which it would be appropriate to join new *parties* as well as new *claims* where the plaintiff has asserted a federal claim. The question has not been specifically decided by the United States Supreme Court, since the Court in *Aldinger v. Howard, supra*, refused to exercise jurisdiction because of statutory provisions not applicable here. The Supreme Court has thus left open the question of jurisdiction over *additional defendants*, the claims against whom are derived from state law. The dicta of *Aldinger* are somewhat favorable to such jurisdiction in a Federal Tort Claim case:

Other statutory grants and other alignments of parties and claims might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together. *Aldinger, supra*, at 18, 96 S.Ct. at 2422 (Footnote omitted).

█ The lower federal courts are split on the question of "pendent parties." The majority of Courts of Appeal have held that where federal jurisdiction over the federal claim is exclusive, as under the Federal Tort Claims Act, the argument that the federal court is the *only* court that can handle *all* the claims should lead to jurisdiction over additional parties, in line with the *Aldinger* quote above. *Ortiz v. United States*, 595 F.2d 65 (1st Cir. 1979); *Dick Meyers Towing Service Inc. v. United States*, 577 F.2d 1023 (5th Cir. 1978); *Morrissey v. Curran*, 567 F.2d 546 (2nd Cir. 1977); *Transok Pipeline v. Darks*, 565 F.2d 1150 (10th Cir. 1977). Such an interpretation has been squarely rejected by the Ninth Circuit in *Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977); *cert. granted*, 434 U.S. 814, 98 S.Ct. 50, 54 L.Ed.2d 70, *cert. dismissed*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). The Court's research discloses three relevant Eighth Circuit Cases. *Kack v. United States*, 570 F.2d 754, 757, n.4 (8th Cir. 1978); *Schulman v. Huck Finn, Inc.*, 472 F.2d 864, 866–67 (8th Cir. 1973); *Hatridge v. Aetna Casualty & Surety Co.*, 415 F.2d 809, 816–17 (8th Cir. 1969). *Kack* was an action under the Federal Tort Claims Act in which plaintiff sought to bring an action against defendants other than the government. In a footnote, the court cited C. Wright, *Law of Federal Courts*, § 19 ·at 65 (2d Ed.1970) for the proposition that pendent jurisdiction applies only to claims, not to parties. The later edition of that text, C. Wright, *Law of Federal Courts*, § 19 at 76–77 (3d Ed.1976) recognizes that pendent jurisdiction is being applied to parties as well as claims, especial-

ly in light of *Aldinger* and *Moor, supra.* *Kack, supra,* does not cite *Schulman* and *Hatridge,* both of which permitted pendent party jurisdiction. *Hatridge* is not directly applicable, since it was a diversity case. The Aetna Casualty and Surety Company sought to remove an action to federal court when the primary claim was for less than $10,000. The court held that the consortium claim of plaintiff's husband would be joined with plaintiffs' claim in order to meet the jurisdictional amount, because the consortium was derivative to the main claim and thus could be expected to be disposed of in the same lawsuit. In addition, the court spoke favorably of the early cases extending pendent jurisdiction to parties and disapproved the narrow view of the Ninth Circuit. *Schulman* is more directly on point, since it involved a patent infringement case under federal law. A related state law claim for unfair competition was also stated. The district court dismissed the infringement claim against two of the defendants, but retained jurisdiction over all four defendants to adjudicate the state law claims. The Eighth Circuit affirmed, resting its holding on pendent jurisdiction and 28 U.S.C. § 1338(b), which allows for jurisdiction of state law unfair competition claims when joined with patent infringement claims. The court held that both general pendent jurisdiction and pendent jurisdiction under the patent jurisdiction statute should be interpreted so as to allow for pendent parties. It reaffirmed *Hatridge's* rejection of the restrictive Ninth Circuit precedent. The analysis in *Hatridge* and *Schulman* convinces this court that it has discretion to assert jurisdiction over all the claims in this lawsuit, and that the footnote in *Kack* should not be read as mandating an opposite conclusion.

■ The next question to be determined is whether this discretion should be exercised. The court concludes that it should. This conclusion is based primarily on considerations of judicial economy and convenience of the parties. As noted by the Supreme Court in *Aldinger, supra,* the case can be tried *only* in a federal court if it is to be tried together rather than in separate actions. No particular hardship to the defendants has been claimed or shown. There are no difficult, unresolved questions of state law that have been brought to the court's attention as in *Moor, supra.* As the District Court, quoted in *Schulman, supra* at 866, said in exercising discretionary pendent jurisdiction:

> [I]t would be an unjustifiable waste of judicial and professional time—indeed, a travesty on sound judicial administration—to allow plaintiff to try his unfair competition claim against Reynolds and Huck Finn, Inc., in Federal court but to require him to prosecute a claim involving precisely the same facts against Berquist and Solar Plastics, Inc., in a State court.

The same can be said here. The injuries involved in this case all arise from the same set of facts. The question at trial is likely to be which, if any, of defendants are liable for plaintiffs' damages. In such a case, it is preferable to have all the claims arising from this single set of facts tried in one proceeding, not only for convenience, but also to avoid multiplicity and possibly conflicting results.

One other matter comes to the court's attention. Plaintiffs apparently have not alleged jurisdiction based on diversity of citizenship as to any of defendants. If they have attempted to do so, the allegations of the complaint are insufficient. *Keene Lumber Co. v. Leventhal,* 165 F.2d 815, 818, n.1 (1st Cir. 1948). *See Also, Burkhardt v. Bates,* 296 F.2d 315 (8th Cir. 1961); *National Farmers Union Property & Cas. Co. v. Fisher,* 284 F.2d 421 (8th Cir. 1960); *Texaco-Cities Service Pipe Line Co. v. Aetna Casualty & Surety Co.,* 283 F.2d 144 (8th Cir. 1960). If plaintiffs desire to allege diversity jurisdiction, they should file an appropriate motion to amend their complaint in accordance with 28 U.S.C. § 1653 within ten calendar days after the filing of this opinion. The court will then decide whether to allow the amendment and what terms, if any, it will assess against plaintiffs under § 1653.

## II

*The Government's Motion to Dismiss.*

Defendant United States seizes on some language in plaintiff's complaint alleging that defendants had "warranted that the oats would be of a sufficient grade, class and quality to feed to livestock" to characterize the complaint as only a generalized allegation that the "farmers relied to their economic detriment on the implied 'warranties' (representations) that the oats were fit for their intended purpose. As such, despite attempts to allege negligence in the complaint, this action is barred by the misrepresentation exception." [28 U.S.C. § 2680(h)].

The test of whether a claim is covered by the § 2680(h) exclusion for misrepresentation is whether it is for "personal injury or property damages arising from negligent performance of operational tasks . . . [or] injury resulting from commercial decisions taken in reliance on governmental misrepresentations . . . ." *Preston v. United States*, 596 F.2d 232, 238 (7th Cir. 1979). If the latter, a case is barred by § 2680(h).

Excluded cases seem to be mainly those where the government made an inspection, issued some sort of certificate describing the condition of certain property, and the plaintiff relied on this inspection either to buy or sell the property. In the leading case of *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), for example, plaintiffs attempted to sue the United States, saying they had paid too much for a house, relying on a FHA appraisal made for mortgage insurance purposes. The Court, following Prosser's definition of misrepresentation as " 'the invasion of interests of a financial or commercial character, in the course of business dealings,' " held that the suit was barred by § 2680(h). Along this same line are cases like *Preston v. United States, supra,* which dismissed a suit brought by farmers who alleged that they relied on the audit of a warehouse by the CCC, showing the warehouse to be in good financial condition when, in fact, it was having serious financial difficulties; *Rey v. United States*, 484 F.2d 45 (5th Cir. 1973), which dismissed a complaint which alleged that a government doctor had erroneously determined that plaintiffs' hogs had hog cholera, causing plaintiff to inject his hogs with vaccine, which resulted in their death; and *Hall v. United States*, 274 F.2d 69 (10th Cir. 1959), dismissing a case where the complaint alleged that USDA employees incorrectly told plaintiff his cattle had brucellosis, causing him to sell his herd at less than a fair market price.

The United States' characterization of plaintiffs' complaint is far too narrow, and does not accurately reflect plaintiffs' allegations. This is a case where the United States did rather more than simply inspect the oats and state that they were fit for cattle feed, with the plaintiffs buying the feed based on this representation. The United States here took on the duty of *supplying* farmers with feed during a drought. If the complaint is to be believed, the United States was negligent in carrying out this duty by allowing the feed to become contaminated to the detriment of those who fed the oats to their cattle.

In this sense, the case is much more like *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). This was a suit for damages caused through the negligence of the Coast Guard in permitting a lighthouse to become extinguished and not repairing the light nor giving warning that it was not functioning. In holding that the complaint stated a claim, the Court said:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light . . . and engendered reliance on the guidance afforded by the light, it was *obligated to use due care* to make certain that the light was kept in good working order; and if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning.

350 U.S. at 69, 76 S.Ct. at 127. (Emphasis Supplied) The Court reaffirmed this holding in *United States v. Neustadt, supra,* when it remarked, in alluding to the facts in *Indian Towing,* that "such a claim does not 'arise out of . . . misrepresentation,' any more than does one based upon a motor vehicle operator's negligence in giving a misleading turn signal. As Dean Prosser has observed, many familiar forms of negligent conduct may be said to involve an element of 'misrepresentation.' . ." 366 U.S. at 711, n.26, 81 S.Ct. at 1302, n.26.

*Indian Towing* has been relied upon to sustain suits against the United States for an air controller's failure to provide up-to-date weather conditions, *Ingham v. Eastern Airlines,* 373 F.2d 227 (2d Cir. 1967). *Ingham* compared the facts before it to *Indian Towing,* and observed, "Both cases . . involved a negligent failure on the part of government employees to perform a duty they had undertaken . . . . Where the gravamen of the complaint is the negligent performance of the operational tasks, rather than misrepresentation, the government may not rely upon § 2680(h) to absolve itself of liability." *Indian Towing* was also used in *Ramirez v. United States,* 567 F.2d 854 (9th Cir. 1977), to allow a suit for the negligence of a government physician in failing to warn a patient of the risk of granuloma in connection with an ear operation. The *Ramirez* court reasoned that "the patient who suffers harm from a surgical complication that should have been described as a possible consequence of surgery when the doctor obtained a patient's consent is the victim of negligent conduct, not of an esoteric form of misrepresentation." 567 F.2d at 857. *See also In re Air Crash Disaster near Silver Plume, Colo.,* 445 F.Supp. 384 (D.Kan.1977); *Hicks v. United States,* 511 F.2d 407 (D.C. Cir. 1975).

Like the Coast Guard's lighthouse, the defendant United States did not need to supply feed to plaintiffs, but once it undertook to do so, a duty arose where the United States was obligated to use ordinary care to see that the feed provided was not foreseeably harmful to livestock. *See e. g. Cohan v. Associated Fur Farms,* 261 Wis. 584,

53 N.W.2d 788 (1952). If it did not, and plaintiffs were damaged by the contaminated feed, defendants should not be allowed to escape liability just because, in addition to supplying bad feed, defendant also misrepresented its fitness for use. This case is more than "[a] misrepresentation which was relied upon in making a business decision," *Preston v. United States,* 596 F.2d at 239; it involves "a negligent failure on the part of government employees to perform a duty they had undertaken." The government having entered into the field of selling feed, it must, like any private party, be held

> liable for negligence in the manufacture or sale of any product which may reasonably be expected to be capable of inflicting substantial harm if it is defective. Since the liability is to be based on negligence, the [government] is required to exercise the care of a reasonable man under the circumstances. [Its] negligence may be found over an area quite as broad as [its] whole activity in preparing and selling the product.

Prosser, *Torts* at 643–44 (4th Ed.1971).

█ Count I, against the United States, is sufficiently grounded in negligence to be good against dismissal; Count II is only against the non-governmental defendants and not subject to the FTCA limitations; it is difficult to tell, but Count III, which alleges breach of warranty, also only seems to be against the private defendants, but if against the United States to any extent, it is dismissed to that extent; Count IV, against the United States, is under negligence, in this case the theory of res ipsa loquitur, and may not be dismissed; Count V is against the non-governmental defendants; but Count VI, which is against the United States under the theory of breach of warranty, should be dismissed, since suits under the FTCA cannot be in theories other than in negligence. *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *United States v. Page,* 350 F.2d 28 (10th Cir. 1965).